UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BENJAMIN KALM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 25-13376-FDS |
| | ) | |
| EXERGEN CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

SAYLOR, J.

This is an action by a former sales representative seeking unpaid commissions. Jurisdiction is based on diversity of citizenship.

Plaintiff Benjamin Kalm worked for defendant Exergen Corporation as a sales representative in Latin America and the Caribbean. Under the agreement between the parties, plaintiff was generally entitled to commissions earned after the agreement was terminated, unless it was terminated for cause. In July 2025, following approximately two and a half years of work, Exergen terminated the agreement. Exergen contends that it did so because plaintiff submitted expense requests that included misstatements, which it asserts met the standard to terminate the agreement for cause. Plaintiff disagrees and argues that the termination was pretextual as a means to avoid paying him the post-termination commissions to which he was otherwise entitled.

The complaint asserts three claims: one against Exergen and Dr. Francesco Pompei, the president of Exergen, under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, and two against Exergen for breach of contract and breach of the implied covenant of good faith and

fair dealing.  Defendants have moved to dismiss the complaint in its entirety.  For the reasons

that follow, the motion will be denied.

I.      **Background**

      A.      **Factual Background**

The following facts are set forth as alleged in the complaint.[1]

Benjamin Kalm is a resident of Santiago, Chile.  (Compl. ¶ 1, Dkt. No. 1).

Exergen is a Massachusetts corporation, headquartered in Watertown, Massachusetts.  It

operates facilities in Massachusetts and New Hampshire that manufacture thermometers for

medical use.  (*Id.* ¶¶ 2, 7).  Dr. Francesco Pompei, a Massachusetts resident, is Exergen's

president.  (*Id.* ¶ 3).

In January 2023, Kalm traveled to Massachusetts to interview for the position of

International Sales Representative with Exergen.  (*Id.* ¶¶ 8-9).  He was offered the position and

accepted it.  He and Exergen then executed an agreement titled "Independent International Sales

Representative Agreement" (the "Agreement"), on January 24, 2023.  (Dkt. No. 1-2).

The Agreement broadly provided that Kalm would sell Exergen's products in Latin

America and the Caribbean.  In return, he would receive certain commissions on the sales he

generated, as well as monthly "advances" that resembled a salary.  (Agreement § 3).  The

Agreement specifically provided that it could be terminated by either party either for

convenience or for cause.  (*Id.* § 7).  It provided that either party could terminate for cause if the

other party defaulted on its obligations, subject to a 30-day cure period unless the breach was

"not subject to cure."  (*Id.* § 7(b)).

---

[1] On a motion to dismiss, the court may properly consider four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to a plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

The Agreement provided that Exergen would, following termination, pay plaintiff commissions on sales for which "(i) the purchase order was solicited by [plaintiff]; (ii) the purchase order is accepted by [Exergen] within one hundred eighty (180) days after the notification of termination of this Agreement; and (iii) [Exergen] receives payment with respect to all Products and Services ordered under such purchase order within one (1) year after the effective termination date of this Agreement," subject to plaintiff's cooperation and certain offsets. (*Id.* § 8(a)). Those commissions would not, however, be due if plaintiff were terminated for cause. (*Id.*). The Agreement also included a Massachusetts choice-of-law provision. (*Id.* § 10(a)).

During his tenure at Exergen, Kalm worked from his home in Chile, various countries in Latin America and the Caribbean, and occasionally the United States. (*Id.* ¶¶ 18-24). He travelled for work purposes to Massachusetts for seven days; Florida for 71 days; and Puerto Rico for 21 days. (*Id.*). During those work trips, he incurred travel, food, and marketing expenses. He requested approvals for larger expenses, submitted monthly expense reports, and received reimbursements. (*Id.* ¶¶ 25-27). He submitted the requests and expense reports to Ellen Minkels, Exergen's Senior Director of International Sales. (*Id.* ¶ 28). According to the complaint, she would sometimes ask him for an explanation of certain expenses, but always approved them after receiving the explanation; she never expressed concerns about the expenses, and Exergen approved and paid for all of the requests. (*Id.* ¶¶ 29-30).

The complaint alleges that Kalm's working relationship with Minkels began to deteriorate in 2025. Exergen terminated him on July 30, 2025, for "bringing in expenditures misrepresenting the reason of expense," allegedly without providing notice of which expenses were misrepresented. (*Id.* ¶¶ 31, 33-35). According to the complaint, Exergen did not provide

3

him with an opportunity to explain or cure any of the alleged misrepresentations before the Agreement was terminated.  (*Id.* ¶ 36).

B.  **Procedural Background**

The complaint was filed on November 11, 2025.  It asserts three claims:  (1) violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, against Exergen and Pompei; (2) breach of contract against Exergen; and (3) breach of the implied covenant of good faith and fair dealing against Exergen.

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

II.  **Standard of Review**

To survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a court must "take the complaint's well-pleaded facts as true, and . . . draw all reasonable inferences in the plaintiff's favor."  *Lowe v. Mills*, 68 F.4th 706, 713 (1st Cir. 2023) (quoting *Frese v. Formella*, 53 F.4th 1, 5 (1st Cir. 2022)) (citation modified).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.

2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III.    Analysis

#### A.    Massachusetts Wage Act (Count 1)

Defendants first contend that the Massachusetts Wage Act claim must be dismissed because the Act does not apply to work performed outside the United States.  (Defs.' Mot. 3-6, Dkt. No. 7).

The Wage Act provides, in relevant part, that an employee who is discharged must be "paid in full on the day of his discharge."  Mass. Gen. Laws ch. 149, § 148.  Its provisions apply to commissions, as well as ordinary wages, "when the amount of such commissions . . . has been definitely determined and has become due and payable to [an] employee."  *Id.*[2]  The statute is silent, however, as to its geographic reach, including whether it applies to work performed outside the United States.

The Supreme Judicial Court has held that the Wage Act can apply to work performed in another state, but has expressly left open the question of whether it applies to work performed in a foreign country.  In *Taylor v. Eastern Connection Operating, Inc.*, 465 Mass. 191 (2013), a case concerning the application of the Massachusetts independent-contractor statute to work performed in New York, the SJC addressed whether Massachusetts labor law could apply to work performed in states outside Massachusetts.  *Id.* at 198-200.  The court applied Massachusetts choice-of-law principles to determine that it could.  *Id.* at 199.  In so doing, the court rejected the defendant's reliance on a prior decision of the Superior Court that held that the

---

[2] Plaintiff also contends that he was improperly classified as an independent contractor rather than an employee.  (Compl. ¶ 34).  Because defendant does not claim that the Wage Act is inapplicable because plaintiff was in fact an independent contractor, the Court will assume, for purposes of resolving this motion, that plaintiff was an employee of defendant.

Wage Act did not apply to work performed outside the United States. *Id.* at 198 n.9 (citing

*Hadfield v. A.W. Chesterson Co.*, 2009 WL 3085921 (Mass. Super. Ct. Sep. 15, 2009)).  The

court first distinguished *Hadfield* on the ground that it did not address the Wage Act's application

to work performed within another state.  *Id.*  But it also called into question the decision's

reasoning.  Noting that *Hadfield* relied on several federal cases concerning application of state

wage and hour statutes outside the United States, the court noted that "[those] cases, in turn, rely

on United States Supreme Court decisions establishing a presumption against the application of

Federal statutes to conduct occurring outside the United States." *Id.*  The court declined to apply

a similar presumption to the interstate context presented in the case before it.  It wrote:

"Assuming without deciding that there is a presumption against the application of Massachusetts

statutes outside the United States, *but see O'Connell v. Chasdi*, 400 Mass. 686, 689 n.3 (1987)

(applying Civil Rights Act, G.L. c. 12, § 11I, to conduct occurring in South America), we

conclude that there is no corresponding presumption against the application of Massachusetts

statutes to conduct occurring outside Massachusetts but within the United States." *Id.*

That discussion, including the "but see" cite to *O'Connell*, suggests that there is

substantial doubt as to whether there is a presumption against the application of Massachusetts

statutes to conduct that occurs abroad.[3]  Perhaps unsurprisingly, therefore, courts are split on

---

[3] Looking to the facts of *O'Connell* further emphasizes the point.  *O'Connell* involved application of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11H and 11I, to sexual harassment that occurred in South America between two employees of a Massachusetts corporation.  *See O'Connell*, 400 Mass. at 687-88, 689 n.3.  In the opinion, the SJC noted that the issue of the statute's extraterritorial application was "not before [it]" because "no party raised the issue before this court, and there is nothing in the record to indicate that it was raised at trial." *Id.* at 689 n.3.  Nonetheless, the court noted the existence of many Massachusetts contacts in the case, and that "the statute does not contain a provision limiting its application" to conduct within the United States. *Id.*

Another session of this court later held that the MCRA does not apply to conduct that occurs entirely outside the United States. *See Doricent v. American Airlines, Inc.*, 1993 WL 437670, at *8 (D. Mass. Oct. 19, 1993).  But the SJC seemed to criticize that decision as one of the federal district court cases relied upon by *Hadfield*.  *Taylor*, 465 Mass. at 198 n.9.

6

whether the Wage Act applies to work performed outside the United States.  Some courts, including another session of this court, have held that the Wage Act does so apply, at least under certain circumstances.  *See Serebrennikov v. Proxet Grp. LLC*, 2025 WL 2962807, at *8-10 (D. Mass. Oct. 20, 2025).  Others, however, have held that it does not.  *See Lockley v. Studentcity.com, Inc.*, 2019 WL 7753749, at *3 (Mass. Super. Ct. Dec. 23, 2019).

*Lockley* involved allegations that the defendant "target[ed] college students throughout the United States, offering them spring break travel packages whereby they travel to and work at resorts outside of the country."  *Lockley*, 2019 WL 7753749, at *1.  Plaintiffs in the case were two college students, one from Massachusetts and one from Colorado.  *Id.*  They worked in the Bahamas in the spring of 2018, where allegedly they were required to work more than 40 hours per week, and were paid only a daily stipend of $28.57.  *Id.*

The Massachusetts resident brought a claim under the Wage Act.  The court, after noting the somewhat confused nature of the case law, decided that the Wage Act did not apply to the plaintiff's work performed entirely outside the United States.  *Id.* at *3.  "Just as no foreign country can impose on the United States the terms and conditions of employment that the foreign country would allow within its own borders," the court wrote, "Massachusetts does not have the power to legislate the terms and conditions of employment that occurs exclusively within a foreign country."  *Id.*  The court acknowledged the uncertain nature of the case law on this point, but nonetheless found that applying Massachusetts labor law outside the United States raised concerns not addressed by the SJC in *Taylor*.

The Court finds *Lockley's* analysis compelling.  It is true that under typical choice-of-law principles, there are numerous situations where Massachusetts law may govern a dispute arising from conduct that occurred outside the Commonwealth.  "Massachusetts follows a functional

choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole," and is "explicitly guided by the Restatement (Second) of Conflict of Laws." *Viscito v. National Planning Corp.*, 34 F.4th 78, 83 (1st Cir. 2022) (citation modified).

But different considerations arise where a state seeks to regulate conduct that occurs within the borders of another sovereign nation.  For example, the federal Fair Labor Standards Act explicitly provides that its requirements do not apply to "any employee whose services during the workweek are performed in a workplace within a foreign country."  29 U.S.C. § 213(f).  Although the text of a different federal statute obviously does not control the interpretation of Massachusetts law, it would be strange to hold that, where the federal government has determined that federal laws regulating employment should not apply outside the United States, the laws of an individual State could nonetheless apply.  Power over foreign affairs belongs to the federal government alone, to the exclusion of the individual States.  *See Arizona v. United States*, 567 U.S. 387, 394-95 (2012) (recognizing the "National Government's . . . inherent power as sovereign to control and conduct relations with foreign nations").[4]

For those reasons, it is the Court's view that the Wage Act does not apply to work performed outside the borders of the United States.  However, the Wage Act claim will not be dismissed on that basis.  The complaint does allege that plaintiff worked for seven days in Massachusetts, 71 days in Florida, and 21 days in Puerto Rico.  (Compl. ¶¶ 20, 22, 24).  Based on the allegation that "[a] significant portion of the post-termination commissions" to which

---

[4] The *Serebrennikov* court did not consider the unique considerations that arise where a state attempts to regulate employment outside the United States, rather than merely in another state.  *See Serebrennikov*, 2025 WL 2962807, at *8-10.

8

plaintiff claims he is entitled "are from orders that will ship through the distributor in Miami, Florida," it is certainly plausible that at least some of plaintiff's unpaid commissions were earned as a result of work performed in the United States. (*Id.* ¶ 41).

Accordingly, because the complaint plausibly alleges that plaintiff performed some work while within the United States, and Massachusetts appears to have a more significant relationship to the parties' relationship than any other state, the Wage Act likely applies to plaintiff's work within the United States.[5]  As a result, the motion to dismiss will be denied as to the Wage Act claim.

### B.        <u>Breach of Contract (Count 2)</u>

Defendants further contend that the breach of contract claim should be dismissed because the complaint does not allege which provision of the contract was actually breached.

"Under Massachusetts law, a breach of contract claim requires the plaintiff to prove that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result." *Schuster v. Wynn MA, LLC*, 118 F.4th 30, 44 (1st Cir. 2024) (citation modified).  The parties do not appear to dispute that the Agreement is a valid and binding contract.  The sole issue, therefore, is whether Exergen breached the contract.

Exergen contends that it was not required to pay plaintiff the post-termination commissions because the Agreement was terminated for cause.  The provision of the Agreement

---

[5] The Wage Act applies to work performed outside Massachusetts, but within the United States, where Massachusetts has the "most significant relationship" to the employment relationship between the parties, applying conflict-of-laws principles from the Second Restatement.  *See Dow v. Casale*, 83 Mass. App. Ct. 751, 756-57 (2013); *Viscito*, 34 F.4th at 84.  Under that approach, Massachusetts appears to have a more substantial relationship to the Agreement between plaintiff and defendants than Florida or any other state.  The defendants are domiciled in the Commonwealth; the parties negotiated the Agreement in Massachusetts; the Agreement contains a Massachusetts choice-of-law provision; and plaintiff returned to Massachusetts several times during the term of the Agreement. (Compl. ¶¶ 2-3, 8-10, 14, 20).  The mere fact that plaintiff did some work in Florida during his tenure as a "mobile employee, untethered to any particular workplace" does not overcome the other substantial connections between the parties and the Commonwealth.  *See Dow*, 83 Mass. App. Ct. at 758.

concerning for-cause termination reads, in relevant part, as follows:

> If either party defaults in the performance of any provision of this Agreement, then the non-defaulting party may give written notice to the defaulting party that if the default is not cured within thirty (30) days from the date of the notice, the Agreement may be terminated for cause. If the non-defaulting party gives such notice and the default is not cured during such thirty (30) day period, then the non-defaulting party may immediately terminate this Agreement upon written notice. Notwithstanding the foregoing provisions of this Section 7(b) . . . either party shall have the right to terminate this Agreement, effective immediately upon written notice, if the other party breached any provision of this Agreement and such breach is not subject to cure . . . .

(Agreement § 7(b)).

Section 8(a) of the Agreement further provides that in most cases, defendant must pay plaintiff any commissions from outstanding sales upon termination of the Agreement, unless it is terminated for cause.  (*Id.* § 8(a)).

The complaint alleges that Exergen terminated the Agreement without giving plaintiff an opportunity to cure any default, and Exergen does not appear to contest this point.  (Compl. ¶ 47; Defs.' Mot. 7 & 7 n.2).  Therefore, pursuant to section 7(b), Exergen breached the Agreement unless plaintiff breached first and plaintiff's breach was "not subject to cure."   (Agreement § 7(b)).

Neither section 7(b) nor any other provision of the contract identifies which breaches are "not subject to cure."[6]  The complaint alleges that Exergen told plaintiff the Agreement was being terminated because plaintiff "[brought] in expenditures misrepresenting the reason of expense." (Compl. ¶ 34).  Presumably, then, defendant contended that plaintiff breached section

---

[6] The Agreement is far from a model of contract drafting.  For example, section 8(a) appears to include certain notes from the drafting process that were presumably not intended to be included in the final contract.  (*See* Agreement § 8(a) ("If EXERGEN is owed any amounts by REPRESENTATIVE, EXERGEN shall have the right, in written agreement with REPRESENTATIVE, *this is an overkill……*to offset any commission payable by EXERGEN to REPRESENTATIVE by such obligation owed to EXERGEN by REPRESENTATIVE." (emphasis added))).

10

3(e) of the Agreement, which addresses reimbursements. (Agreement § 3(e)).[7] But section 3(e) does not state that any breach of that section cannot be cured. It is at least a plausible interpretation that a minor breach (such as an honest one-time mistake) could be cured, but a more significant breach (such as sustained fraudulent misrepresentations) could not.

Accordingly, the complaint plausibly alleges that Exergen did not properly terminate the Agreement for cause because it failed to give plaintiff an opportunity to cure any breach he may have committed. And, assuming the contract was not properly terminated for cause, Exergen was required to pay plaintiff the post-termination commissions required by section 8(a). Because the complaint alleges that Exergen failed to pay him those commissions, it states a claim for breach of contract, and the motion to dismiss will be denied as to Count 2.

C. **Implied Covenant of Good Faith and Fair Dealing (Count 3)**

Finally, Exergen contends that the implied-covenant claim should be dismissed because "the implied covenant of good faith and fair dealing does not provide a general remedy for allegedly unfair or improperly motivated terminations." (Defs.' Mot. 9).

"Under Massachusetts law, every contract implies good faith and fair dealing between the parties to it." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 237 (1st Cir. 2013) (citation modified). "The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471 (1991) (citation modified). "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall

---

[7] The provision includes no express requirement that plaintiff provide a reason for his expenses when submitting them to Exergen. (Agreement § 3(e)).

11

spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005).

Implied-covenant claims are somewhat limited in the employment context. One circumstance in which an implied-covenant claim exists is where an "employee [is] terminated in bad faith" and is due "compensation [that] is clearly connected to work already performed." *Suzuki v. Abiomed, Inc.*, 943 F.3d 555, 562 (1st Cir. 2019) (quoting *Harrison v. NetCentric Corp.*, 433 Mass. 465, 473 (2001)). Under this doctrine, sometimes called the "*Fortune* doctrine" after the decision in *Fortune v. National Cash Register Co.*, 373 Mass. 96 (1977), "the paradigmatic example of bad faith occurs when an employer seeks to avoid the payment of earned compensation by discharging an employee who is 'on the brink of successfully completing' a sale or some other milestone that will trigger entitlement to the disputed compensation." *Suzuki*, 943 F.3d at 562 (quoting *Fortune*, 373 Mass. at 105).

Here, the complaint adequately alleges that Exergen terminated the Agreement in bad faith in order to avoid paying plaintiff certain commissions that he had earned. The complaint alleges that in past circumstances where Exergen required more information concerning plaintiff's reimbursement requests, one of its employees would simply ask him for an explanation. (Compl. ¶ 29). It alleges that prior to July 2025, all his reported expenses had been approved and paid. (*Id.* ¶ 30). And it alleges that the termination of the Agreement followed a "deterioration" in the working relationship between plaintiff and Minkels. (*Id.* ¶ 31). Based on those allegations, it is a plausible inference that Exergen raised the expenditures issue in bad faith as a basis to terminate the Agreement with plaintiff without paying him the additional

commissions to which he was entitled.  Accordingly, the complaint states a claim for breach of

the implied covenant, and the motion to dismiss will be denied as to Count 3.

## IV.    Conclusion

For the foregoing reasons, defendants' motion to dismiss is DENIED.

**So Ordered.**

/s/  F. Dennis Saylor IV

F. Dennis Saylor IV

Dated:  August 6, 2026                United States District Judge

13